**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Marcia S. Krieger**

Civil Action No. 10-cv-00722-MSK-MJW

ALLEN GRIDER;
GLENN BELCHER; and
VALERIE PILTZ,

      Plaintiffs,

v.

CITY AND COUNTY OF DENVER; and
CITY OF AURORA,

      Defendants.

---

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS**
**TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

---

**THIS MATTER** comes before the Court on two motions to dismiss: (1) Defendant City and County of Denver's Motion to Dismiss for Lack of Subject Matter Jurisdiction **(#137)**, and (2) Defendant City of Aurora's Motion to Dismiss Plaintiff Belcher's and Plaintiff Piltz's Claims for Lack of Subject Matter Jurisdiction **(#140)**. The Plaintiffs filed a combined Response **(#161)**, and the Defendants each filed a Reply **(## 163, 164)**.

### I. Background

As alleged in the Amended Complaint **(#85)** and detailed in previous orders, both Denver and Aurora ban the possession of pit bull dogs.[1] The Plaintiffs, Allen Grider, Glenn Belcher, and Valerie Piltz, each claim to be a disabled individual protected by the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and to use a pit bull as a service animal to assist with the tasks of daily living.

---

[1] Denver's pit bull ban is found in the Denver Municipal Code § 8-55. Aurora's ban is found in the Aurora Code of Ordinances § 14-75.

1

As a result of ruling on earlier motions, *see* Order at Dkt. # 100, this action has only one legal claim — for a failure to accommodate in violation of the ADA and 28 C.F.R. §35.130(b)(7), in that the Defendants refused to modify their ordinances as necessary to accommodate the Plaintiffs' disabilities. In reality, however, there are six claims — each Plaintiff asserts a claim against each Defendant. The Plaintiffs seek both damages and injunctive relief in the form of modification of the Defendants' ordinances.

The Defendants now challenge the Plaintiffs' standing to assert their claims. The City of Denver argues that none of the named Plaintiffs have standing to seek either retrospective or prospective relief against it. The City of Aurora makes the same argument with regard to Plaintiffs Belcher and Piltz.[2] The Defendants contend that because the Plaintiffs have not sufficiently alleged their standing, their claims must be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

## II. Standard of Review

When evaluating a plaintiff's standing at the pleading stage of the litigation, the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). At the same time, the Court may allow the plaintiff to supply affidavits that further particularize allegations of fact deemed supportive of the plaintiff's standing. *Id.* The Court construes statements made in such affidavits in the light most favorable to the plaintiff. *Southern Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1152 (10th Cir. 2013). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice," for on a motion to dismiss, the

---

[2] Aurora does not challenge Plaintiff Grider's standing to assert his claim against it. The Court will address it in this opinion, however, because constitutional standing necessary to the Court's jurisdiction and must be addressed before proceeding to the merits. *See Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 424 F.3d 1208, 1211 (10th Cir. 2006). The Court is aware of Aurora's pending Motion for Summary Judgment **(#141)** as to Plaintiff Grider's claim.

Court presumes that "general allegations embrace those specific facts that are necessary to support the claim." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). If, however, the plaintiff's standing does not adequately appear from the materials of record, that being the complaint and additional affidavits submitted by the plaintiff, the claim must be dismissed.³ *Warth*, 422 U.S. at 502.

Where, as here, the original complaint has been superseded by an amended complaint, the court examines the amended complaint in assessing the allegations supporting standing. *Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir. 2007). However, standing is determined at the time the action was brought, and courts generally look to when the complaint was first filed, not to subsequent events, to determine if a plaintiff has standing. *See Palma*, 707 F.3d at 1153.

### III. Analysis

The jurisdiction of federal courts is limited to actual cases or controversies. U.S. Const. art. III, §2 cl.1. To establish a case or controversy, a plaintiff bears the burden of demonstrating three elements: (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000)). Each plaintiff must have standing to seek each form of relief in each claim. *Id.*

---

³ However, standing is not merely a pleading requirement. *See Defenders of Wildlife*, 504 U.S. at 561. Each element of standing must be supported with the "manner and degree of evidence required at the pertinent, successive stages of the litigation." *Id.* Thus, were this proceeding at the summary judgment stage, the Plaintiffs would be required to establish the elements of standing through specific facts, by affidavit or other evidence. *Id.*

3

The "injury in fact" requirement is satisfied differently depending on whether the plaintiff seeks prospective or retrospective relief. *See Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)). To seek prospective relief, the plaintiff must suffer a continuing injury or be under a real and immediate threat of being injured in the future. The threatened injury must be "certainly impending" and not merely speculative. *Laidlaw*, 528 U.S. at 190. A claimed injury that depends on speculation or conjecture is beyond the bounds of a federal court's jurisdiction. A plaintiff seeking retrospective relief, on the other hand, satisfies the "injury in fact" requirement if she suffered a past injury that is concrete and particularized. *Tandy*, 380 F.3d at 1284.

Here, the Plaintiffs' failure to accommodate claims are brought under Title II of the ADA, which provides that no disabled person "shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. Thus, to the extent the Plaintiffs allege an injury in fact, that injury must be fairly traceable to the Defendants' challenged conduct of denying the benefits of or access to local government services. However, the threshold standing inquiry does not depend on the merits of the Plaintiffs' contention that the challenged conduct is illegal. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

Because each Plaintiff asserts a separate claim against each of the two Defendants, the Court separately examines the standing of each Plaintiff as to each Defendant. The facts as set forth below are taken from the Amended Complaint **(#85)** and additional affidavits attached to the Plaintiffs' Response **(#161)**, and are viewed in the light most favorable to the Plaintiffs.

### A. Standing as to Claims against Denver

As an initial matter, the Court finds that no Plaintiff has standing to seek prospective relief against Denver. The Plaintiffs request prospective relief in the form of an order requiring Denver to modify its breed restriction ordinance to make an exception for service dogs. However, the Court takes notice of the fact that since the filing of this action, Denver issued a written policy modifying its procedures for enforcing the ban. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (court may take judicial notice of facts that are a matter of public record without converting a motion to dismiss into a motion for summary judgment). The modification states that Denver will not impound pit bulls that are identified by their handler as a service dog. Thus, to whatever extent any of the Plaintiffs allege that they cannot go to Denver out of fear that their dog will be impounded, those allegations do not permit an inference that they are under any real and immediate threat of future injury. Accordingly, none of the Plaintiffs have standing to seek prospective relief against Denver.

The Court now turns to the Plaintiffs' allegations of past injuries caused by Denver.

*1. Plaintiff Grider*

Mr. Grider lives in Aurora, Colorado. In the complaint and affidavits, he makes numerous allegations of past injury against Aurora. His only references to Denver, however, are that (1) he is "afraid of the City of Denver taking [his] service dog for an alleged violation of its pit bull ordinance or its 2011 Animal Care & Control Policy regarding pit bull service dogs," and (2) he lives "very close" to the border of Denver does not know where the exact boundary line is. These allegations only imply the possibility of future injury, not past injury. Indeed, Mr. Grider makes no allegation that he suffered any past injury traceable to Denver. Accordingly, Mr.

Grider lacks standing to seek retrospective relief against Denver, and his claim against Denver is dismissed.

*2. Plaintiff Belcher*

Mr. Belcher moved to Denver in October 2009, but he does not live there anymore. After moving to Denver, he contacted the Director of Animal Control to seek approval to keep his dog in city limits. He was told by the Director that he would have to either get rid of his dog or move out of Denver.

The Court finds that Mr. Belcher's allegations are insufficient to allege a past injury attributable to Denver. Mr. Belcher alleges that Denver denied him "approval" to keep his dog, but does not allege how the "denial" actually injured him. Instead, the allegations indicate that despite the ordinance, Mr. Belcher lived in Denver with his dog and without any interruption from Denver. Mr. Belcher hypothesizes that if he had needed to call the police or the fire department to his home, Denver would have found his dog and impounded it, while also giving him a fine and/or jail time. But, importantly, he does not allege that any of these things ever happened. Accordingly, Mr. Belcher lacks standing to seek retrospective relief against Denver, and his claim against Denver is dismissed.

*3. Plaintiff Piltz*

Ms. Piltz does not reside in Colorado. In 2010, she visited Colorado to attend the United Kennel Club Dog Show held in Aurora. During her visit, she stayed with her sister who lives in Denver. Before Mr. Piltz's arrived, her sister (on Ms. Piltz's behalf) contacted the Director of Denver Animal Control, seeking an accommodation for Ms. Piltz's service dogs while she was in town. Ms. Piltz's sister was told that unless Ms. Piltz is blind or deaf, she could not have her

6

dogs in Denver. Despite what her sister was told, Mr. Piltz travelled to Denver with her dogs. During her stay, she was "extremely concerned" that her dogs would be taken from her.

Like Mr. Belcher, the Court finds that Ms. Piltz has not sufficiently alleged a past injury attributable to Denver. She alleges that Denver did not accommodate her to allow her dogs to be in Denver, but she does not allege how the denial impacted her during her stay. She makes conclusory allegations that she was denied the "ability to possess, use and travel with her service dogs" and that she was denied "the legal right to freely to and stay [in] Denver," but she makes no allegation of any concrete and particularized injury. Like Mr. Belcher, Ms. Piltz merely hypothesizes about ways in which she could have been injured. Such allegations are insufficient to establish a concrete and particularized injury in fact. Accordingly, Ms. Piltz lacks standing to seek retrospective relief against Denver, and her claim against Denver is dismissed.

### B. Standing as to Claims against Aurora

*1. Plaintiff Grider*

Mr. Grider, a resident of Aurora, alleges that his pit bull service dog is trained to assist him with his disability, Post Traumatic Stress Disorder (PTSD). He alleges that in 2009, Aurora Animal Control seized his service dog and kept her impounded for 10 days. The dog was then released to Mr. Grider's friend, who does not live in Aurora. As a result, Mr. Grider was without his service dog for over 5 months. He alleges that without his dog, he suffered severe anxiety, had difficulty sleeping, and was confined to his home. (His dog was allegedly returned to him after the filing of this lawsuit.)

In March 2010, Aurora sent Mr. Grider a letter informing him that his pit bull service dog would be allowed in Aurora if he complied with a number of requirements. One such requirement was that the dog must be confined in an enclosure in his yard. Mr. Grider asserts

7

that this requirement restricts his use of one of his dog's services, which is that "she be free to walk into an area before [him], so that the dog can determine whether any people are outside his residence and alert him, if necessary, before [he] goes into the back yard." Mr. Grider also complains that requiring him to put a warning sign on his entry gates stigmatizes him and calls attention to his disability. He alleges that he has not complied with Aurora's requirements in order to get his dog licensed to be in the city. Although Mr. Grider lives in Aurora with his dog, he alleges that he is afraid to call the police or fire department to his home for fear that they would confiscate his dog. Mr. Grider generally alleges that he fears having his dog taken from him if he simply walks down a city street or goes to a park.

The Court finds that Mr. Grider lacks standing to seek prospective relief against Aurora. The Court takes notice of Aurora's breed restriction ordinance, § 14-75, which permits the owner/handler of a pit bull service animal to apply for and receive a license to keep their pit bull in the city. In order to receive such license, the owner must satisfy several requirements. One requirement is that when the pit bull is on the owner's outdoor property, it must be confined in an enclosure or with its owner, and the "rear yard enclosed by a six foot fence maintained in accordance with chapter 146 of this Code." Aurora Code of Ordinances § 14-75(d)(7). Mr. Grider does not allege any reason as to why he cannot comply with this requirement. Indeed, it is unclear from the allegations whether he does or does not have such fence already. Another licensing requirement is that a "warning sign shall be affixed to the gate of the structure notifying people a pit pull is contained within." *Id.* Although Mr. Grider complains about this requirement, the ordinance states that the requirement "shall be waived for a pit bull that is a service animal." *Id.* As to the additional requirements, Mr. Grider makes no allegation that he cannot satisfy them, or that by doing so, the service provided by his dog is rendered useless.

8

Thus, although Mr. Grider alleges that he currently does not have a license for his dog, the Court finds that such license is available to him to avoid the threat of his dog being seized. For that reason, Mr. Grider has not alleged an injury that is "certainly impending."

As to retrospective relief, the Court finds that Mr. Grider has sufficiently alleged a past injury. He alleges that as a result of Aurora seizing his dog, he was confined to his home. The Court finds these allegations sufficient to confer standing to seek retrospective relief against Aurora.

*2. Plaintiff Belcher*

As to Aurora, Mr. Belcher alleges that, at some unspecified time, he went to Aurora for an appointment about his government benefits. During the visit, he kept his dog hidden because he was afraid that she would be taken and euthanized. He does not live in Aurora, but he states that he has friends in Aurora and that he needs to be in Aurora with his dog "as part of this case."

The Court finds that Mr. Belcher does not have standing to seek any form of relief against Aurora. His allegation that he had to keep his dog hidden while in an Aurora building does not establish a concrete and particularized past injury, thus he does not have standing to seek retrospective relief. As to future injury, Mr. Belcher generally alleges that he will have to return to Aurora at some unknown point in time, either to visit friends or for a matter associated with this case. However, Aurora's ordinance allows a "non-resident owner/handler" to have a pit bull service dog in the city for up to two weeks. *See* Aurora Code of Ordinances § 14-75(c)(7). Mr. Belcher does not allege that he needs to be in Aurora for more than two weeks at any point in time. Thus, his allegations are insufficient to allege any immediate threat of future injury. Accordingly, Mr. Belcher has not alleged an injury in fact and he lacks standing to seek any form of relief against Aurora. His claim against Aurora must be dismissed.

*3. Plaintiff Piltz*

Ms. Piltz visited Aurora for a dog show in 2010. Aurora permitted Ms. Piltz to have her dogs in the city for a three-day "approved" period, which was set forth in a letter issued to her. Ms. Piltz had to carry with her a copy of the letter so that she could present it if confronted by authorities. She was also informed that he dogs would have to be muzzled at all times. Ms. Piltz lives out of state, but she states that she travels to Colorado several times per year and stays with her sister, who lives near Aurora.

The Court finds that Ms. Piltz has not alleged an injury in fact. As to past injury, she does not allege how Aurora actually injured her in the form of denying her access to any government services or programs.[4] She claims to have been required to carry a letter around with her and that her dogs needed to be muzzled, but she does not allege how those requirements in any way impeded her ability to travel through Aurora and to attend the dog show. As to future injury, Ms. Piltz does not allege that she intends to return to Aurora for any definite amount of time, let alone a period exceeding two weeks. Thus, she has not alleged any threat of future injury. Accordingly, Ms. Piltz lacks standing to seek any form of relief against Aurora, and her claim must be dismissed.

## IV. Conclusion

For the forgoing reasons, the Defendant City and County of Denver's Motion to Dismiss for Lack of Subject Matter Jurisdiction **(#137)** and the Defendant City of Aurora's Motion to Dismiss Plaintiff Belcher's and Plaintiff Piltz's Claims for Lack of Subject Matter Jurisdiction **(#140)** are **GRANTED**. All claims by the Plaintiffs Belcher and Piltz are dismissed. Likewise,

---

[4] Ms. Piltz alleges that she was required to disclose specific information about her disability to Aurora, in violation of the ADA. To whatever extent that allegation can be read to allege an injury in fact, the alleged injury is not fairly traceable to the challenged conduct of the defendant – that is, a denial of government services.

Mr. Grider's claim against the City and County of Denver is dismissed. The only remaining claim going forward in this case is Mr. Grider's claim against the City of Aurora. However, Mr. Grider is limited to seeking retrospective relief for past injuries. All future pleadings shall omit reference to the City and County of Denver as a Defendant in this case.

Because the Plaintiffs have previously amended their complaint and have also been given sufficient opportunity to submit affidavits to cure pleading deficiencies, the Court does not grant them leave to amend.

Dated this 25th day of July, 2013.

                                        **BY THE COURT:**

                                        */s/ Marcia S. Krieger*

                                        Marcia S. Krieger
                                        Chief United States District Judge